UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 22-21262-CIV-MORENO

CERTAIN UNDERWRITERS AT
LLOYDS OF LONDON,

      Plaintiff,

v.

SCENTS CORPORATIONS, d/b/a
PERFUMES OF THE WORLD,

      Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE came before the Court upon both parties' Motions for Summary Judgment **(D.E. 43 and D.E. 45)**, each filed on **September 5, 2023**.

I.    **Factual Background**

The dispute in this case concerns a shipment of $351,543.00 of perfume products. [D.E. 28] ¶ 6. Perfumes of the World contracted with Benron Perfume, LLC; M&R Distributors, Inc.; and Elegance Distributors, Inc.—three perfume suppliers in South Florida—to buy perfume products and have them shipped via truck to Dallas, Texas. [D.E. 43]. Perfumes of the World also contracted with Total Quality Logistics, a freight broker, to arrange for the transportation of the goods. *Id.* The trailer for the products was loaded at the three different shipper's warehouses, and then the truck and trailer departed South Florida heading to Perfumes of the World in Dallas, Texas. *Id.* The truck and trailer were stolen at a Petro Gas Station in Reddick, Florida, (north of Orlando) during transit. *Id.* When the truck was ultimately recovered, the perfume goods were missing and stolen. *Id.* The shippers demanded payment from Perfumes of the World, claiming

that the risk of loss passed to Perfumes of the World when the truck and trailer left Miami. *Id.* Having not been paid by Perfumes of the World for the cargo, the shippers filed insurance claims with their insurance underwriters, Lloyd's, the Plaintiff in this case. *Id.* Lloyd's made payment to the shippers in the total amount of $351,543.00 (including applicable deductibles) and is pursuing payment from Perfumes of the World. *Id.*

Total Quality Logistics, the freight broker, contractually agreed and represented to Perfumes of the World that it would hire a carrier with additional insurance to cover the high-value perfume products to be shipped for an additional cost. [D.E. 45] Total Quality Logistics hired a shipping freight carrier, New Glory Corporation, to make three pick-ups in South Florida for receiving, loading, and transporting the perfume products from the three perfume suppliers to Perfumes of the World in Dallas, TX. *Id.* Total Quality Logistics neither obtained standard insurance coverage nor the additional insurance coverage for the high value load as contractually required and as paid for by Perfumes of the World. *Id.* New Glory did not carry high value insurance coverage and did not accept high value goods for shipping and transporting goods. *Id.* New Glory was further unaware that it would be shipping high-value perfume products and instead understood that it would be transporting lower value toiletry items based upon the contents of the bills of lading certified by each of the perfume suppliers. *Id.* New Glory claims that had it known that the goods being transported were high-value perfume products, it would have never accepted the shipping contract or the perfume products. *Id.* Further, New Glory alleges that had it known it was shipping high-value perfume products, it would have taken certain precautionary measures to ensure the safe transport of goods, such as security cameras, GPS, and kill switches. *Id.*

## II. Issue

Plaintiff Certain Underwriters at Lloyd's of London ("Lloyd's") argues that the purchase terms of the cargo were "free on board-origin"—in other words, that the risk of loss passed to Defendant Perfumes of the World once the cargo was loaded into the truck and received by the carrier. Lloyd's, therefore, claims that Perfumes of the World breached the purchase contracts by failing to pay for the perfume products and, as a result of that breach, Lloyd's incurred damage in the amount of $351,543.

Defendant Scents Corporation ("Perfumes of the World,") conversely, argues that it did not assume the risk of loss because the perfume suppliers materially misdescribed the products loaded with the carrier in the Bills of Lading. In other words, because of the perfume suppliers' inaccuracies in describing the goods tendered, Perfumes of the World feels that title and risk of loss failed to transfer to it.

## III. Legal Analysis

If there is no genuine issue of material fact that the three perfume suppliers materially misrepresented the products in their bills of lading—and that the risk of loss did not transfer to Perfumes of the World—then Perfumes of the World will prevail. In that scenario, Lloyd's argument that the "free on board" terms govern the risk of loss is irrelevant. If, however, the risk of loss *does* transfer despite the bills of lading, then the free on board shipment terms are more pertinent. This analysis begins with arguments from Defendant's Motion for Summary Judgment.

This dispute over perfume products pertains to the purchase and sale of goods in Florida, governed by the Florida Uniform Commercial Code ("Fla. UCC"). Fla. Stat. § 672.102. Under the Fla. UCC, "[w]here the seller is required . . . to send the goods to the buyer and the contract does not require her or him to deliver them at a particular destination," then the seller must "obtain

and promptly deliver or tender in due form any document necessary to enable the buyer to obtain possession of the goods or otherwise required by the agreement or by the usage of trade." Fla. Stat. § 672.504(2). Sellers typically satisfy this requirement through a bill of lading.

A bill of lading is a "document of title evidencing the receipt of goods for shipment issued by a person engaged in the business of directly or indirectly transporting or forwarding goods." Fla. Stat. § 671.201(6). The bill of lading is the "basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers." *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 (1982) (citing *Texas & Pac. R. Co. v. Leatherwood*, 250 U.S. 478, 481 (1919)). Additionally, "[e]ach term has in effect the force of a statute, of which all affected must take notice." *Texas & Pac. R. Co.*, 250 U.S. at 481. A bill of lading is "the best evidence of the contract of carriage between the carrier and the seller," "serves as the receipt for the goods under transport," and "is a document of title to property which can be endorsed and negotiated." *King Ocean Cent. Am. v. Precision Cutting Servs.*, 717 So. 2d 507, 510 (Fla. S. Ct. 1998).

Under the Florida UCC, [i]f a person negotiates or delivers a bill of lading, the transferor warrants to its immediate purchaser the following: (1) "[t]he document is genuine; (2) [t]he transferor does not have knowledge of any fact that would impair the document's validity or worth; and (3) [t]he negotiation or delivery is rightful and fully effective with respect to the title to the document and the goods it represents." Fla. Stat. § 677.507. Here, Benron and M&R made material misrepresentations in their bills of lading by misdescribing the goods loaded with the carrier as low-value "toiletry preparations" instead of high-value, high-end perfume products. Therefore, any warranty by Benron or M & R extends only to those misdescribed toiletry items identified in their respective bills of lading. *See* Fla. Stat. § 677.507(3). Elegance's invoice contains no

description of the goods tendered to the carrier other than a generic description of "139 boxes on 2 pallets." Perfumes of the World, however, did not order "139 boxes on 2 pallets" from Elegance; rather, it ordered high-value perfumes and expected to take title to those perfumes at the time of tender to the carrier through proper description in the bill of lading. Ultimately, because the bills of lading failed to accurately describe the goods tendered, title and risk of loss should not transfer to Perfumes of the World.

The three perfume suppliers' breaches of contract negated transfer of any risk of loss to Perfumes of the World. A shipment contract is considered the "normal" contract in which "the seller is required to send the subject goods by carrier to the buyer but is not required to guarantee delivery thereof at a particular destination." *Pestana v. Karinol Corp.*, 367 So. 2d 1096, 1099 (Fla. 3d DCA 1979). Under a shipment contract, the seller must do the following:

> "(1) put the goods sold in the possession of a carrier and make a contract for their transportation as may be reasonable having regard for the nature of the goods and other attendant circumstances,
>
> (2) obtain and promptly deliver or tender in due form any document necessary to enable the buyer to obtain possession of the goods or otherwise required by the agreement or by usage of the trade, and
>
> (3) promptly notify the buyer of the shipment."

*Id.* Further, on a shipment contract, "the risk of loss passes to the buyer when the goods sold are duly delivered to the carrier for shipment to the buyer." *Id.* However, "[w]here a tender or delivery of goods so fails to conform to the contract as to give a right of rejection[,] the risk of their loss remains on the seller until cure or acceptance." Fla. Stat. § 672.510(1). Moreover, a shipper guarantees to an issuer "the accuracy at the time of shipment of the description, marks, labels,

5

number, kind, quantity, condition and weight" and that "the shipper shall indemnify the issuer against damage caused by inaccuracies in those particulars." Fla. Stat. § 677.301(5). "This right of indemnity does not limit the issuer's responsibility or liability under the contract of carriage to any person other than the shipper." *Id.*

Here, Benron and M&R made misrepresentations and falsely certified in their bills of lading that the products being shipped to Perfumes of the World were toiletry products, which are lower value products that do not require high-value insurance. The three perfume suppliers failed to transfer title to the perfume products by failing to correctly describe the goods tendered to the carrier in their respective bills of lading. Therefore, the perfume suppliers retained risk of loss due to their breaches of the warranties and breaches of the bills of lading.

No genuine issue of material fact exists to suggest that the perfume suppliers did *not* materially misrepresent their products in their respective bills of lading. Plaintiff's only counter to Defendant's argument regards the "Free on Board" purchase terms of the cargo—that the risk of loss passed to Perfumes of the World once the cargo was loaded into the truck and received by the carrier. However, even if it is true that the risk of loss should have passed to Perfumes of the World once the cargo was loaded into the truck under "Free on Board—origin" shipment terms, it remains true that the suppliers had an obligation to accurately describe the goods, regardless of shipment terms. They did not meet that obligation. Therefore, at the time of the loading of the cargo, the risk of loss did not pass to Perfumes of the World because the delivery failed to conform to the contract. Thus, the Court GRANTS Defendant's Motion for Summary Judgment.

THE COURT has considered the motions, the responses in opposition, the replies, pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 10th of June 2024.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record