UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 22-21262-CIV-MORENO**

CERTAIN UNDERWRITERS AT
LLOYDS OF LONDON,

      Plaintiff,

v.

SCENTS CORPORATIONS, d/b/a
PERFUMES OF THE WORLD,

      Defendant.

_____/

## ORDER GRANTING PLAINTIFF'S
## RENEWED MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiff's Renewed Motions for Summary Judgment **(D.E. 92)**, filed on **April 29, 2026**. Certain Underwriters at Lloyd's of London ("Plaintiff") subscribing to certain insurance policies, as subrogee of its insureds, seeks to recover $351,543.00 from Scents Corporation, doing business as Perfumes of the World ("Defendant") for failure to pay for a shipment of perfume products. For the reasons below, the Court grants Plaintiff's Motion. The Court concludes that Plaintiff has standing to pursue the subrogated claims, that the Shippers did not waive their breach of contract claims by submitting insurance claims for the theft of the goods, and that Defendant has failed to establish a legally sufficient mitigation defense.

## I.      FACTUAL BACKGROUND

Defendant Scents Corporations, doing business as Perfumes of the World (hereinafter, "Defendant"), buys and sells perfume products. In December 2018, Defendant purchased $351,543 in high-end perfume products from three suppliers—Benron Perfumes, LLC, Elegance

Distributors, Inc., and M&R Distributors International, LLC (collectively, the "Shippers"). Each supplier issued an invoice reflecting Defendant's respective purchases.

After purchasing the goods, Defendant retained Total Quality Logistics, a freight broker, to arrange transportation of the products from Florida to Defendant's facilities in Texas. Defendant requested that Total Quality Logistics secure a motor carrier with high-value cargo insurance and paid all shipping and insurance charges associated with the shipment. Total Quality Logistics, however, retained New Glory Corporation ("New Glory"), a carrier that lacked high-value cargo insurance. New Glory collected the perfume products from each of the three Shippers, loaded them onto a single tractor-trailer, and began transporting the shipment to Texas. During transit, the truck and trailer were stolen while parked at a gas station, resulting in the loss of the entire shipment.

Following the theft, the Shippers demanded payment from Defendant for the goods. Defendant refused payment. The Shippers then submitted claims under their insurance policies issued by Plaintiff Certain Underwriters at Lloyd's of London. Plaintiff paid the covered losses, less applicable deductibles, and received Letters of Subrogation from each shipper before initiating this action in state court to recover the amounts paid.

## II.    **PROCEDURAL HISTORY**

The case was removed to this Court, where both parties moved for summary judgment. Plaintiff argued that the risk of loss passed to Defendant when the goods were properly delivered to and loaded by the carrier, and that Defendant therefore breached the purchase contracts by refusing to pay for the goods. Defendant did not dispute that it withheld payment. Instead, Defendant argued that the Shippers' bills of lading materially misdescribed the goods tendered to the carrier, preventing the carrier from taking appropriate precautions during shipment. According

to Defendant, those alleged inaccuracies rendered the Shippers' tender ineffective, such that the risk of loss never passed.

The Court denied Plaintiff's motion and granted summary judgment for Defendant. Plaintiff appealed. The Eleventh Circuit reversed, holding that "the alleged inaccuracies in the shippers' bills of lading did not affect the validity of the shippers' tender of goods to the buyer-hired carrier for shipment to the buyer." 2025 WL 2692474, at *1 (11th Cir. Sept. 22, 2025). The Eleventh Circuit also concluded that "the evidence otherwise reflects that the goods were subject to a 'shipment contract,'" such that title and the risk of loss passed to the buyer when the goods were properly delivered to the carrier for shipment." *Id.* Accordingly, the Eleventh Circuit vacated this Court's order on the parties' cross-motions for summary judgment.

The Eleventh Circuit remanded for consideration of one remaining issue that had not been addressed: whether the Shippers waived their breach-of-contract claims by submitting "insurance claim[s] for the theft of the perfume products—not for failure to pay or breach of contract by Defendant." *Id.* at *3. Accordingly, the main issue identified by the Eleventh Circuit on remand is whether the Shippers waived their breach-of-contract claims against Defendant by electing to pursue insurance proceeds.

### III.   **LEGAL STANDARD**

"Summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to judgment as a matter of law.'" *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (quoting Fed. R. Civ. P. 56(a)). Thus, the basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The moving party has the burden

of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

## IV. DISCUSSION

Although the Eleventh Circuit remanded the case for consideration of Defendant's waiver argument, Defendant raises three issues in opposition to Plaintiff's renewed motion for summary judgment. First, Defendant argues that a fact question exists as to whether the Shippers waived their claims against Defendant. Next, Defendant argues that Plaintiff fails to establish standing to assert the subrogated claims on behalf of the Shippers. Finally, Defendant argues that a fact question exists regarding the Shippers' failure to mitigate damages. While the Court is not convinced that the latter two arguments are properly before it for consideration, it addresses each in turn.

### A. The Shippers Did Not Waive Their Claims Against Defendant

Defendant argues that a genuine issue of material fact exists as to whether the Shippers waived their breach of contract claims against Defendant. According to Defendant, the Shippers knowingly abandoned those claims when, rather than pursuing Defendant for nonpayment, they elected to submit insurance claims for the theft of the perfume products. Defendant contends that because the Shippers were aware of their contractual rights yet chose to seek recovery under their insurance policies, each element of waiver is satisfied.

Plaintiff respond that the Shippers never released, abandoned, or otherwise relinquished their breach of contract claims against Defendant. Rather, Plaintiff asserts that after the Shipper submitted claims under their insurance policies, each executed a Letter of Subrogation assigning

4

its rights and remedies to Plaintiff as a condition of payment. Plaintiff argues that the Shippers' claims were transferred rather than waived. The Court agrees.

A waiver is the intentional relinquishment of a known right. *See, e.g., WSG W. Palm Beach Dev., LLC v. Blank*, 990 So. 2d 708, 715 (Fla. 4th DCA 2008). In Florida, the elements of waiver are: (1) the existence of a right which may be waived; (2) actual or constructive knowledge of the right; and (3) the intent to relinquish the right. *Progressive Express Ins. Co. v. Camillo*, 80 So. 3d 394, 400 (Fla. 4th DCA 2012). A party may waive any rights to which he or she is legally entitled, by actions or conduct warranting an inference that a known right has been relinquished. *Torres v. K-Site 500 Assocs.*, 632 So. 2d 110, 112 (Fla. 3d DCA 1994).

The undisputed record contains no evidence that the Shippers intended to relinquish their breach of contract claims against Defendant. To the contrary, the record reflects that after seeking payment under their insurance policies, the Shippers executed Letters of Subrogation expressly transferring their rights and remedies to Plaintiff. Those actions are inconsistent with an intent to abandon or waive the underlying contractual claims. Instead, they reveal an intent to preserve those claims by assigning them to Plaintiff.

"Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right." *State Farm Mut. Auto. Ins. Co. v. Johnson*, 18 So. 3d 1099, 1100 (Fla. 2d DCA 2009) (quoting *W. Am. Ins. Co. v. Yellow Cab Co. of Orlando, Inc.*, 495 So. 2d 204, 206 (Fla. 5th DCA 1986)). "Subrogation is designed to afford relief when one is required to pay a legal obligation which ought to be met, either wholly or partially, by another." *Allstate Ins. Co. v. Metro. Dade Cnty.*, 436 So. 2d 976, 978 (Fla. 3d DCA 1983). "Florida law recognized two types of subrogation: equitable (often referred to as legal) and contractual (often referred to as

conventional)." *Arch Ins. Co. v. Kubicki Draper, LLP*, 318 So. 3d 1249, 1253 (Fla. 2021). Here, Plaintiff relies on contractual subrogation to make its claim.

Contractual subrogation "is based on an agreement between the parties that the party paying the debt will be subrogated to the rights and remedies of the original creditor." *E. Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n*, 508 So. 2d 1323, 1325 (Fla. 3d DCA 1987). "Essentially, it is an agreement that 'the party paying the debt will be subrogated to the rights of the original creditor.'" *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 376 (Fla. 2008) (quoting *Nat'l Union Fire Ins. Co. v. KPMG Peat Marwick*, 742 So. 2d 328, 332 (Fla. 3d DCA 1999), *approved*, 765 So. 2d 36 (Fla. 2000)). "[A]n insurer's subrogation right may be expressly provided for by a clause that is included either in the applicable insurance policy or in a settlement agreement with an insured . . . ." *Nat'l Union Fire Ins.*, 742 So. 2d at 332.

Here, Plaintiff's contractual subrogation rights are expressly set forth in the Letters of Subrogation executed by each of the three shippers. (D.E. 28-1, 28-2, 28-3). Each letter identifies the applicable insurance policy and the amount paid by Plaintiff and provides that "by virtue of such payment you have become subrogated to all our rights and remedies in and in respect of the subject matter insured in accordance with the laws governing the contract of insurance." (D.E. 28-1, 28-2, 28-3). The language is unequivocal. Rather than extinguishing the Shippers' contractual rights, the Letters expressly transferred those rights to Plaintiff. As the Florida Supreme Court has explained, "contractual subrogation permits the insurer, who—on behalf of the insured—pays the damage, to step into the shoes of its insured and pursue the same claim the insured could have pursued." *Arch Ins. Co.*, 318 So. 3d at 1254.

In accordance with the terms of the insurance policy, the Court concludes the Shippers did not waive their claims by submitting insurance claims for the theft of the perfume products. The

6

record reflects not an intentional relinquishment of those claims, but their contractual assignment to Plaintiff through subrogation. Accepting Defendant's position would effectively nullify the very purpose of contractual subrogation. *See Metro. Dade Cnty.*, 436 So. 2d at 978 ("Subrogation is designed to afford relief when one is required to pay a legal obligation which ought to be met, either wholly or partially, by another."). The Court declines to do so.

### B. Plaintiff Has Established Standing to Assert the Subrogated Claims on Behalf of the Shippers

The Court likewise concludes that Plaintiff has standing to pursue the Shippers' subrogated claims. As discussed above, the undisputed evidence establishes that the Shippers executed valid Letters of Subrogation assigning their rights and remedies to Plaintiff after Plaintiff paid the covered losses under the applicable insurance policies.

Defendant argues that Plaintiff has failed to establish that proper Lloyd's underwriters are prosecuting this action. The record, however, does not support that contention. Lloyd's of London consists of multiple underwriting syndicates that subscribe to insurance policies under the Lloyd's marker. The undisputed evidence establishes that the subscribing underwriters on each applicable policy paid the insureds' claims and thereby acquired the corresponding contractual subrogation rights.

The Letters of Subrogation identify the applicable insurance policy, the insured shipper, and the subscribing Lloyd's underwriters by policy number. Those documents expressly evidence the transfer of the Shippers' rights and remedies to Plaintiff. The record likewise establishes the chain of Plaintiff's subrogation rights. Benron's claim was paid by Aviva Insurance Limited through Price Forbes. Elegance's claim was paid by Barbican Insurance – Syndicate 1955 through CRC Group. M&R's claim was paid through Price Forbes by the subscribing Lloyd's underwriters identified in the applicable insurance policy, with SLC 2003 serving as the lead underwriter and

7

underwriting 15.0944% of the risk. In each instance, the corresponding Letter of Subrogation identifies the subscribing underwriters and cross-references the applicable policy number.

Defendant has identified no evidence creating a genuine dispute regarding either the chain of Plaintiff's subrogation rights or Plaintiff's status as the proper party to prosecute those rights. Accordingly, the Court concludes that Plaintiff has standing to pursue the Shippers' subrogated claims.

### C. Defendant Has Failed to Establish a Legally Sufficient Mitigation Defense

Finally, Defendant argues that the Court should deny summary judgment because a fact question exists regarding the Shippers' failure to mitigate damages. Defendant contends that M&R became aware of the location of certain stolen goods but failed to notify law enforcement and that the remaining Shippers did nothing to mitigate their damages. According to Defendant, because the Shippers retained title to the goods, any recovered merchandise would have reduced Plaintiff's subrogation claims. The Court is unpersuaded.

To begin, the appellate court has determined that the transaction constituted a shipment contract and that the risk of loss passed to Defendant when the goods were duly delivered to the carrier. Under Florida law, "title to the goods and the risk of loss passes to the buyer when the goods are properly delivered to the carrier for shipment of the buyer." *Ladex Corp. v. Transportes Aeros Nacionales, S.A.*, 476 So. 2d 763, 765 (Fla. Dist. Ct. App. 1985); *see* Fla. Stat. § 672.509(a)(1). That determination is now the law of the case and governs the parties' respective rights and obligations on remand.

Defendant's mitigation defense is inconsistent with that allocation of risk. Although Plaintiff, as subrogee, stands in the shoes of its insureds and is subject to any defenses that could have been asserted against them, Defendant cites no Florida authority imposing upon a seller a

8

continuing obligation to investigate, recover, or otherwise protect goods for the benefit of a buyer after the risk of loss has shifted under section 672.509.

Nor does Florida's doctrine of avoidable consequences support Defendant's position. "The doctrine of avoidable consequences, which is also somewhat inaccurately identified as the 'duty to mitigate' damages, commonly applies in contract and tort actions." *Sys. Components Corp. v. Florida Dept. of Transp.*, 14 So. 3d 967, 982 (Fla. 2009) (citing 17 Fla. Jur.2d, *Damages*, §§ 103–04 (2004)). As the Florida Supreme Court explained, failure to mitigate is somewhat of a misnomer because "[t]here is no actual 'duty to mitigate'" as an injured party is not required to "undertake any ameliorative efforts." *Id.* Likewise, "[e]xtraordinary efforts on the part of a plaintiff to mitigate are not required." *Thompson v. Fla. Drum Co.*, 651 So. 2d 180, 182 (Fla. 1st DCA 1995), *approved*, 668 So. 2d 192 (Fla. 1996). "Rather, the injured party is only accountable for those hypothetical ameliorative actions that could have been accomplished through 'ordinary reasonable care,' without requiring undue effort or expense." *Sys. Components Corp.*, 14 So. 3d at 982.

Even assuming the doctrine properly applies under these circumstances, Defendant has failed to produce evidence from which a reasonable jury could conclude that the insured Shippers acted unreasonably or that any alleged failure to contact law enforcement caused an identifiable increase in damages. At most, Defendant speculates that had M&R reported its suspicion that a competitor had stolen the goods, law enforcement would have recovered the shipment and Plaintiff's loss would have been reduced. Such conjecture is insufficient to create a genuine dispute of material fact.

Finally, Defendant's reliance on the seller's retention of title is misplaced. The Eleventh Circuit held that title to the goods and the risk of loss passed to Defendant. Accordingly, the Court

concludes that Defendant has failed to establish a legally sufficient mitigation defense capable of defeating summary judgment.

## V.     CONCLUSION

For the reasons explained above, it is

**ADJUDGED** that Plaintiff's Renewed Motion for Summary Judgment is GRANTED. The Clerk is directed to close the case.

DONE AND ORDERED in Chambers at Miami, Florida, this _____ of July, 2026.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

10